Joshua W. Carden, SBN 021698
419 East Juanita Avenue, Suite 103
Mesa, AZ 85204
joshua@cardenlivesay.com
T. (480) 345-9500
F. (480) 345-6559
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey W. Newbill II,<br><br>            Plaintiff,<br><br>v.<br><br>CVS Caremark, LLC,<br><br>            Defendant. | **ORIGINAL COMPLAINT**<br>**(JURY TRIAL REQUESTED)** |

Plaintiff Jeffrey W. Newbill II, by and through the undersigned counsel, hereby seeks relief under Title VII and 42 U.S.C. § 1981, as follows:

**PARTIES**

1. Plaintiff Jeffrey W. Newbill II was at all relevant times herein a resident of Maricopa County, Arizona, and an "employee" of CVS Caremark, LLC for purposes of Title VII and Section 1981.

2. Defendant CVS Caremark, LLC ("CVS") is a foreign limited liability company at all relevant times conducting its business in Maricopa County, Arizona.

3. CVS was an "employer" of Plaintiff within the meaning of purposes of Title VII, 42 U.S.C § 2000e, *et. seq*., and 42 U.S.C. § 1981, at all times material to this action.

4. At all times pertinent to this Complaint, CVS's managerial employees were acting within the course and scope of their employment with CVS; and as a result thereof, CVS is responsible and liability is imputed for the acts and omissions of its managerial employees, as



alleged herein, under the principles of *respondeat superior*, agency, and/or other applicable law.

5. All acts alleged in this Complaint occurred in Maricopa County, Arizona.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

7. The unlawful employment practices described herein were committed within the State of Arizona, on Defendant's premises located in Maricopa County, State of Arizona.

8. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## ALLEGATIONS COMMON TO ALL CLAIMS

9. CVS, combined with its relevant parents and affiliates, is a retail drug store chain and pharmacy benefit manager ("PBM") with over 9,600 stores operating throughout the United States.

10. CVS employs over 250,000 individuals working in its stores, distribution centers, office locations and corporate headquarters.

11. The Caremark division provides comprehensive PBM services to over 2,000 health plans and other clients.

12. One of the services provided by CVS Caremark is a mail order pharmacy.

13. Relevant to this Complaint, CVS operates a mail order facility at 2700 W. Frye Road in Chandler, Arizona.

14. CVS Caremark hired Mr. Newbill on September 26, 2016 as a Representative I for Benefits in Specialty Mail ("Rep I"), and he has remained in that Rep I role since he was hired.

15. Mr. Newbill is African-American.

16. From early into his employment, until the present, Mr. Newbill (along with other African-American employees) has been subjected to differing expectations and differing standards for his work than non-African-American employees.

17. Despite receiving "meets expectations" ratings and bonuses in both of his first two years as an employee (2016 and 2017), Mr. Newbill was unsuccessful in his bid advance to a "Rep II" position or obtain "work from home" privileges as other Rep I's were permitted to do.

18. The excuses offered for the denials ranged from either no explanation or shifting



2

explanations.

19. For example, in April 2018, when Mr. Newbill complained to HR about his non-selection, he was initially told it was because of "production scores" – when he demonstrated his high production scores, the explanation shifted to "idle time percentage" (time with the computer screen locked).

20. However, the idle time metric used to justify his non-promotion was not the same metric that had been in place during the year that should have been considered for his promotion.

21. Additionally, Mr. Newbill's supervisors frequently required him to perform training for new hires (even though there were more experienced Reps available to do the training), taking him away from his computer, increasing his idle time percentage, and lowering his production scores.

22. Within a few weeks after his complaint to HR, Mr. Newbill received his first write up and was transferred to a new supervisor's team.

23. As time wore on and Mr. Newbill saw no fruit from his complaint, he filed his first charge with the EEOC in September 2018.

24. Upon information and belief, CVS was notified by the EEOC of the charge almost immediately after it was filed, on or about September 19, 2018.

25. Mr. Newbill's co-workers began to make fun of him for complaining, though Mr. Newbill had not disclosed his complaints to them.

26. Upon information and belief, one or more of Mr. Newbill's managers informed the co-workers of the complaint.

27. Approximately, a month after the first EEOC charge, HR informed Mr. Newbill that he was now on a "final write up" for attendance.

28. Two months later, CVS transferred Mr. Newbill again to a new team (without any training) and a new supervisor (who was herself African-American).

29. Mr. Newbill's new desk was located directly under a powerful air conditioning vent, and away from the rest of his team.

30. Due to his awareness of a past tendency to become ill quickly under those



circumstances, he asked if he could switch to one of the immediately nearby empty desks.

31. That request was flatly denied.

32. Upon information and belief, CVS's plan was to get Mr. Newbill to resign by isolating him and making him as uncomfortable as possible.

33. For example, within a few months, another member of Mr. Newbill's new team was allowed to sit at the previously empty desk he had requested.

34. Despite only being on his new supervisor's team for one week during the review period, the new supervisor gave Mr. Newbill his annual review, marking it "needs improvement."

35. His new supervisor also wrote up him during this same time frame (February 2019) for "wearing a hat in the building."

36. Mr. Newbill spoke to multiple employees he could see wearing hats inside the building, and each of them confirmed that they had never been spoken to about wearing a hat inside, and certainly not written up for it.

37. Mr. Newbill made additional complaints to HR due to the obviously unfair treatment in March 2019, that also fell on deaf ears.

38. The stress of the discriminatory and retaliatory treatment caused Mr. Newbill to seek medical attention in March/April 2019.

39. Soon thereafter, he received three write ups (ostensibly for performance) in July, September, and October 2019, but he was able to overturn the third one after meeting with an upper-level manager.

40. However, Mr. Newbill was not allowed the October 2019 pay increase given even to brand-new hires.

41. The "performance" standards CVS alleged against Mr. Newbill were not applied uniformly and consistently to Mr. Newbill's co-workers.

42. Additionally, Mr. Newbill was regularly directed to assist other teams and providing training – making it difficult for CVS to suggest that he was incompetent or failing to perform at the expected level.

43. Some of Mr. Newbill's white trainees were promoted to Rep II positions.



44. As a result of CVS's response to his first charge, Mr. Newbill filed a second charge of discrimination and retaliation with the EEOC as the EEOC eventually advised him to do, although Mr. Newbill had uploaded back in April 2019 his documentation of the retaliation issues to the EEOC investigator assigned to his first charge.

45. Upon information and belief, Mr. Newbill has experienced substantial discrimination because of his race and/or in retaliation for his protected activity.

**Administrative Remedy Exhaustion**

46. Mr. Newbill's first Charge of Discrimination is dated September 6, 2018. A true and correct copy of that document is attached as Exhibit A.

47. Mr. Newbill's second Charge of Discrimination is dated January 8, 2020. A true and correct copy of that document is attached as Exhibit B.

48. Mr. Newbill received notice of suit rights for both Charges from the EEOC dated March 22, 2020. True and correct copies of those documents are attached hereto as Exhibits C & D.

49. This Complaint is brought prior to 90 days from the date Mr. Newbill received his right to sue letter.

50. All conditions precedent to the filing of this lawsuit have occurred or been satisfied.

**FIRST CAUSE OF ACTION – TITLE VII DISCRIMINATION**

51. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

52. Plaintiff is a member of a protected class: African-American.

53. As described above, Plaintiff was subject to unlawful discrimination in that he was held to a different standard and disciplined differently than his white co-workers by his supervisors – disparate treatment because of his race.

54. As a direct and proximate result of CVS's conduct, Plaintiff has sustained damages in the form of lost wages and value of benefits. Plaintiff continues to lose the value of such wages and benefits into the future.

55. As a direct and proximate result of CVS's conduct, Plaintiff has further sustained damages in the form of emotional distress.



56. CVS's conduct was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages.

## SECOND CAUSE OF ACTION -TITLE VII RETALIATION

57. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

58. Plaintiff engaged in several protected activities, including by reporting a perceived discriminatory environment to Defendant's HR and to the EEOC.

59. Defendant has retaliated against Plaintiff for engaging in protected activity by taking several adverse actions as described herein, in violation of Title VII.

60. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained damages in the form of lost wages and value of benefits. Plaintiff continues to lose the value of such wages and benefits into the future.

61. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained damages in the form of emotional distress, embarrassment, humiliation, loss of reputation, and loss of self-esteem.

62. Defendant's conduct was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages against the Defendant.

## THIRD CAUSE OF ACTION - RACED-BASED DISCRIMINATION IN VIOLATION OF 42 USC § 1981

63. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

64. Plaintiff is a member of a non-white minority – African-American.

65. Plaintiff's employment with CVS was contractual in nature.

66. Defendant discriminated against Plaintiff based on his actual or perceived race in the performance, modification, and termination of his employment contract, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

67. Specifically, Defendant gave less protection from discrimination to Plaintiff and heightened the standards and requirements placed upon him than those imposed on similarly-situated white individuals.



68. Defendant's discrimination was intentional.

69. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained damages in the form of lost wages and value of benefits. Plaintiff continues to lose the value of such wages and benefits into the future.

70. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained damages in the form of emotional distress, embarrassment, humiliation, loss of reputation, and loss of self-esteem.

71. Defendant's conduct was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages against the Defendant.

## FOURTH CAUSE OF ACTION - RACED-BASED RETALIATION IN VIOLATION OF 42 USC § 1981

72. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

73. Plaintiff is a member of a non-white minority – African-American.

74. Plaintiff's employment with CVS was contractual in nature.

75. Defendant retaliated against Plaintiff based on his protected activity of complaining about discriminatory actions based on his race, including but not limited to his first charge with the EEOC.

76. The retaliation directly impacted performance and modification of his employment contract, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

77. Defendant's retaliation was intentional.

78. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained damages in the form of lost wages and value of benefits. Plaintiff continues to lose the value of such wages and benefits into the future.

79. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained damages in the form of emotional distress, embarrassment, humiliation, loss of reputation, and loss of self-esteem.



80. Defendant's conduct was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages against the Defendant.

## JURY TRIAL DEMANDED

81. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

A. Declaring that the acts and practices complained of herein are in violation of federal law;

B. Directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment or employment opportunities;

C. Directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's unlawful actions, and make him whole for all earnings he would have received but for Defendant's discriminatory and retaliatory treatment, including, but not limited to, back pay, front pay, pension, and other lost benefits;

D. Awarding Plaintiff compensatory and punitive damages in an amount to be determined by the jury;

E. Awarding Plaintiff pre- and post-judgment interest, the costs of this action, and reasonable attorneys' fees as provided by the statutes providing the causes of action cited herein; and

F. Granting such other and further relief as this Court deems necessary and proper.

Respectfully submitted on this 8th day of June, 2022,

CARDEN LIVESAY, LTD.

By: s/Joshua W. Carden
Joshua W. Carden
*Attorneys for Plaintiff*
Jeffrey W. Newbill II

