WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey W. Newbill, II, | No. CV-22-01001-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| CVS Caremark, LLC, | |
| Defendant. | |

Before the Court is Defendant CVS Caremark, LLC's, Motion to Dismiss and Compel Arbitration (Doc. 14). Also pending is Plaintiff's Motion to Strike Unauthorized Filings (Doc. 18). For the following reasons, the Motion to Strike is denied and the Motion to Compel Arbitration is granted.

## BACKGROUND

In September 2016, Plaintiff Jeffrey Newbill began working for Caremark, LLC. Prior to starting work, he received an email directing him to complete his onboarding paperwork before the first day. (Doc. 15-1 at 1.) Plaintiff logged into an online portal to complete the documents. *Id.* At the outset, he created an electronic signature, which he could use on all documents. (Doc. 16-1 at 2.) As Plaintiff clicked through the documents in the portal, he signed each document by clicking and applying his pre-made electronic signature. (*Id.* at 3-4.)

One of the documents Plaintiff added his electronic signature is titled "CVS Health

Arbitration Agreement." (Doc. 14-1 at 6.) The Arbitration Agreement states that the employee and CVS agree that any dispute covered by the agreement "will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum." (*Id.*) It explains that "[c]overed [c]laims include but are not limited to disputes regarding . . . discrimination, retaliation and termination arising under the Civil Rights Act of 1964." (*Id.*) The Arbitration Agreement then details the steps to initiate an arbitration proceeding, as well as the relevant rules and procedures and costs and fees. Next, it explains that the employee has the right to opt out of arbitration by notifying CVS within 30 days because "[a]rbitration is not a mandatory condition of [the employee's] employment at CVS." (*Id.* at 7.) The conclusion of the Arbitration Agreement states, "You understand that by agreeing to this Agreement and not opting out, You and CVS are giving up the right to go to court to resolve Covered Claims." (*Id.*)

Plaintiff states that he did not have the ability to print the document at the time of signing, and after he signed the documents, his login credentials expired, preventing him from retrieving a copy of the document online. Defendants attach a screenshot of the online portal in which Plaintiff signed the agreement, that states "[i]f you would like a copy of the agreement at any time in the future, please contact the CVS Health Human Resources Department." (Doc. 16-1 at 6.) Nevertheless, the parties do not appear to dispute that the Plaintiff signed the document using his electronic signature and did not opt out of the Arbitration Agreement at any time after signing.

Thereafter, on June 8, 2022, Plaintiff filed this action alleging four counts of race-based discrimination and retaliation under Title VII and 42 U.S.C. § 1981. On August 23, 2022, Defendants filed the instant Motion to Compel Arbitration, asserting that Plaintiff's claim must, in accordance with the Arbitration Agreement, be submitted to an arbitrator for resolution.

## DISCUSSION

I. **Motion to Compel Arbitration**

    A. **Legal Standard and Motion to Strike**

The parties dispute, to some degree, what legal standard should apply on a motion to compel arbitration. While in some instances it may be appropriate to consider the motion under a Rule 12(b)(6) motion to dismiss standard, the summary judgment standard is most appropriate in this case.

Courts have held that "where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint)," "the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Scudieri v. Chapman Chevrolet Chandler, LLC*, No. 16-cv-09188, 2016 WL 6997164, at *1 (D. Ariz. Oct. 25, 2016) (finding that there is no Ninth Circuit caselaw on point and quoting *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773-74 (3d Cir. 2013)). However, "if arbitrability is unapparent on the pleadings or the party opposing arbitration comes forth with sufficient 'reliable evidence' to raise a fact question going to the validity of the arbitration agreement, the Rule 12(b)(6) standard is no longer appropriate." *Id.* The conversion of the standard for reviewing a motion to compel arbitration "mirrors the process provided by Rule 12(d) for converting a motion to dismiss to a motion for summary judgment." *Id.* at 1 n.15; Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Both parties present matters outside the pleadings to the Court on this motion, including declarations and exhibits. Because the Court considers these matters in ruling on the motion, it is properly considered under a summary judgment standard. Nevertheless, Plaintiff's Motion to Strike is denied because attaching an exhibit to a reply on a motion to compel arbitration is not necessarily precluded under the local rules. While Plaintiff argues that parties are not permitted to file exhibits attached to a reply brief for a summary judgment motion, application of the summary judgment standard does not automatically require application of the Local Rule 56.1 procedure for filing motions for summary judgment. Indeed, the parties clearly deviate from the local rules governing summary

judgment proceedings on motions to compel arbitration by failing to submit a separate statement of facts and/or a controverting statement of facts. Thus, the Court is not persuaded that the procedures under Local Rule 56.1 foreclose Defendants' ability to attach an exhibit to a response memorandum in a motion to compel arbitration. Because the filing is not prohibited by statute, rule, or court order, L.R.Civ. 7.2(m)(1), and because, as was explained at oral argument, none of the material was of particular significance to the Court in its ruling, especially in light of the facts that the Plaintiff does not contest, the motion is denied.

### B. Parties to the Agreement

Caremark, LLC, Plaintiff's employer, is a party to the agreement. Defendants provide, in their declaration, that Caremark, LLC, is a wholly owned subsidiary of CVS Pharmacy, Inc. (Doc. 16-1 at 2.) The Arbitration Agreement states that the employee and CVS agree to arbitrate any dispute covered by the agreement. It explicitly states that the company referred to as "CVS" in the agreement includes CVS Pharmacy, Inc., and its affiliates, successors, subsidiaries, and/or parent companies. Therefore, Plaintiff and Caremark, LLC, are both parties to the agreement.

### C. Knowing Waiver of Title VII Claims

Plaintiff knowingly agreed to arbitrate Title VII claims. In *Ashbey v. Archstone Property Management*, the Ninth Circuit evaluated whether an employee's agreement to arbitrate his Title VII claims was valid. 785 F.3d 1320, 1323 (9th Cir. 2015). The Ninth Circuit made clear that while courts had previously held that parties could not waive their rights to a jury trial in favor of arbitration on Title VII claims, Congress approved the possibility of such a waiver with amendments to Title VII in the Civil Rights Act of 1991. *Id.* However, waiver of statutory remedies in favor of arbitration under Title VII requires a valid agreement to arbitrate and the agreement must be "knowing." *Id.* at 1323-24. In *Ashbey*, several facts made the employee's waiver of Title VII remedies knowing: "(1) he was provided with an acknowledgement form that 'explicitly notified' him the employee manual contained a dispute resolution policy; (2) he signed the acknowledgement form;

(3) the underlying policy was made available to him; and (4) the policy expressly stated that it covered employment-related disputes, including claims of harassment and discrimination under the Civil Rights Act of 1964." *Graham v. United Servs. Auto. Ass'n*, No. CV-20-02210, 2021 WL 2780865, at *3 (D. Ariz. July 2, 2021) (citing *Ashbey*, 785 F.3d at 1325-26).

The facts here are largely the same. As compared to *Ashbey*, Plaintiff was notified even more explicitly because he was provided with a form titled "Arbitration Agreement," which clearly informed him of an agreement to arbitrate. Plaintiff signed the form. Plaintiff's motion suggests that his signature is somehow invalid or unknowing because he created one signature in the online portal that he then applied to all documents. Plaintiff's declaration, however, states that he clicked through each document, applying his signature to each. (Doc. 15-1, ¶ 6.) His motion does not provide any reason why clicking to sign with a personalized but pre-made signature on a document operates any differently than manually forming the signature on each document.

Additionally, in *Ashbey*, a plaintiff knowingly waived his Title VII remedies when he signed an acknowledgement that notified him that the employee manual contained an arbitration policy, and the underlying policy was made available to him. Here, the Plaintiff signed the Arbitration Agreement itself, so it was clearly made available to him. Plaintiff's argument that he was unable to print or later access the Agreement because his online credentials expired is unavailing for several reasons. First, it is not clear that knowing waiver requires that the employer provide continuing access to the agreement; the facts of *Ashbey* suggest that the relevant inquiry is whether the party had access to the text of the underlying arbitration agreement at the time of signing it. 785 F.3d at 1325-26. Moreover, the webpage for the portal where the agreement was signed states "[i]f you would like a copy of the agreement at any time in the future, please contact the CVS Health Human Resources Department." (Doc. 16-1 at 6.) And at oral argument, Plaintiff confirmed that he did not contact the Human Resources Department to obtain a copy of the document. Lastly, as in *Ashbey*, here, the Arbitration Agreement expressly states that it covers disputes

regarding harassment or discrimination, including disputes arising under Title VII.

The fact that Plaintiff did not understand or desire to consent to arbitration is not sufficient to constitute an unknowing waiver. The question is not whether Plaintiff subjectively knew or desired to waive the rights, but rather whether the Agreement's language gave Plaintiff adequate notice for him to have "knowingly" waived his right to a jury trial. *Ashbey*, 785 F.3d at 1324. The language of the agreement is plain; it states that "You and CVS are giving up the right to go to court to resolve Covered Claims." (Doc. 14-1 at 7.) Thus, as in *Ashbey*, "[a]nyone who reviewed the [Arbitration Agreement] would immediately realize he was 'entering into an agreement to waive a specific statutory remedy afforded him by a civil rights statute.'" 785 F.3d at 1325 (quoting *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir. 1997)).

By signing the Arbitration Agreement, Plaintiff knowingly waived the remedies afforded under Title VII, including litigation in this Court.

### D. Procedural Unconscionability

The Arbitration Agreement is not procedurally unconscionable. "[I]n assessing whether an arbitration agreement or clause is enforceable, the [Court] should apply ordinary state-law principles that govern the formation of contracts." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (internal quotations omitted). The parties both indicate that Arizona's law governs. Plaintiff, however, relies primarily on California cases or cases interpreting California law, stating "[i]n determining whether an arbitration agreement is substantively or procedurally unconscionable, the District of Arizona and the Supreme Court of Arizona have looked approvingly to the law of California." (Doc. 15 at 5 n.1 (citing *Cooper v. QC Fin. Servs., Inc.*, 503 F. Supp. 2d 1266, 1285 (D. Ariz. 2007)). Plaintiff misstates this principle, which is more accurately stated as: "*if Arizona law has not addressed an issue*, we look approvingly to the laws of California, especially when interpreting a similar or identical statute." *Cooper*, 503 F. Supp. 2d at 1285 (emphasis added) (internal quotations omitted); *Moore v. Browning*, 203 Ariz. 102, 109 (2002). Therefore, "it does not appear appropriate to turn to California law when Arizona courts

have already addressed procedural unconscionability." *R & L Ltd. Invs., Inc. v. Cabot Inv. Props., LLC*, 729 F. Supp. 2d 1110 (D. Ariz. 2010). Under Arizona law, procedural unconscionability is concerned with "unfair surprise," and courts focus on "those factors bearing upon . . . the real and voluntary meeting of the minds of the contracting part[ies]: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, [and] whether alterations in the printed terms were possible." *Maxwell v. Fidelity Fin. Servs., Inc.*, 184 Ariz. 82, 89 (1995). Plaintiffs raise two reasons for procedural unconscionability, neither of which demonstrate that this contract is procedurally unconscionable.

*Adhesion Contract:* In Arizona, the "conclusion that [the] contract [is] one of adhesion is not, of itself, determinative of enforceability." *Jones v. Gen. Motors Corp.*, 640 F. Supp. 2d 1124, 1130 (D. Ariz. 2009). "A contract of adhesion is fully enforceable, . . . unless the contract is also unduly oppressive or unconscionable." *Brady v. Universal Tech. Inst. of Ariz., Inc.*, No. CV-09-1044, 2009 WL 5128577, at *2 (D. Ariz. Dec. 17, 2009) (citing *Broemmer v. Abortion Servs. of Phoenix, Ltd.*, 173 Ariz. 148, 150 (1992)). Plaintiff provides no basis to suggest that under these standards the contract is procedurally unconscionable.

To start, the Arbitration Agreement contained a clear and conspicuous "opt-out" provision, describing how Plaintiff could opt out of arbitration and explaining that consenting to the agreement was not a condition of his employment. This undermines Plaintiff's argument that the contract was a "take it or leave it" adhesion contract. The fact that Plaintiff's employer required him to sign the paperwork before starting his job does not undermine this determination. The opt-out provision extended for thirty days after signing, and as the terms clearly state, Plaintiff could sign the Arbitration Agreement prior to beginning his employment and subsequently opt out of arbitration within thirty days. (Doc. 14-1 at 7.)

Even if this was an adhesion contract, Plaintiff provides no argument explaining why it is unduly oppressive or unconscionable. The only argument Plaintiff advances is

that one signature was used to sign all documents, and therefore, there was no separation nor highlighting of the arbitration agreement or the opt-out clause. This argument is unpersuasive on two fronts. First, as Plaintiff's declaration demonstrates, although he used one pre-made signature to sign each document within his new-hire portal, he was required to click through and sign each document individually. This means he was specifically made aware of the existence of the Arbitration Agreement and signed it as a separate document. Second, Plaintiff's argument that there was no "highlighting of the . . . opt-out clause" and "no warning that he would lose the right to a jury trial" is plainly contradicted by the text of the Arbitration Agreement and the screen on which Plaintiff signed the agreement. (Doc. 14-1 at 7; Doc. 16-1 at 6 ("The Arbitration Agreement . . . requires that certain claims must be brought and decided in arbitration and not in court. . . . We encourage you to read the Agreement very carefully.")). In light of the notice provided to Plaintiff about the existence of and provisions within the Arbitration Agreement, his ability to opt out, and its applicability to both parties, it is not procedurally unconscionable. *See Graham*, 2021 WL 2780865, at *4 (citing several Arizona cases that have "upheld the enforceability of arbitration clauses within employment contracts, even if the employee was relatively unsophisticated and was unable to negotiate the contractual terms").

*Lack of Access to the Document:* Plaintiff's lack of immediate access to the Arbitration Agreement after signing it does not make it procedurally unconscionable. The fact that Plaintiff needed to request access to the document from HR rather than having immediate access through his online portal does not relate to the core concerns of procedural unconscionability—unfair surprise or "ignorance of important facts . . . that mean bargaining did not proceed as it should." *Brady*, 2009 WL 5128577, at *2. The cases cited by Plaintiff do not suggest as much.[1] Instead, those cases concern a lack of availability of the document, rules, or procedures prior to or at the time of signing. Here, Plaintiff only alleges that he was unable to access the agreement in his portal after signing

---

[1] Moreover, Plaintiff cites only California cases for the proposition that "an agreement may also be procedurally unconscionable if the employee is not provided with a copy of, or direct access to, the arbitration rules or procedures." (Doc. 15 at 5.)

it. This does not make the bargaining process oppressive or unfair because he had a fair opportunity to read the agreement (and was strongly encouraged to do so on the webpage) before signing it, and he had other means of accessing the document after signing. This argument thus does not support a finding of procedural unconscionability.

### E. Staying the Action

If a court finds that an agreement to arbitrate exists, it "may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014); *Forrest v. Spizzirri*, 62 F.4th 1201, 1205-06 (9th Cir. 2023). The decision to stay or dismiss the case is a matter of the Court's discretion. *Forrest*, 62 F.4th at 1205. Plaintiff does not appear to dispute the fact that all claims in his Complaint are covered by the Arbitration Agreement. He requests that the Court stay the matter nonetheless so that he may avoid paying an additional filing fee to reduce any award to a judgment and to prevent later arguments that he did not properly file suit within the applicable statute of limitations. In light of the rational reasons Plaintiff has advanced for a stay, rather than dismissal, a stay is clearly contemplated by the statute and well within the Court's discretion. As such, this case is stayed pending the outcome of arbitration.

### CONCLUSION

For the above reasons, a valid agreement to arbitrate exists between the parties. Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss and Compel Arbitration (Doc. 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **STAYED** pending the outcome of arbitration.

**IT IS FURTHER ORDERED** that the parties file a joint status report on **September 1, 2023, and every 90 days thereafter** concerning the status of this case.

/ / /

1	**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Unauthorized
2	Filings (Doc. 18) is **DENIED**.
3	Dated this 25th day of July, 2023.

*G. Murray Snow*
G. Murray Snow
Chief United States District Judge